## JACOB STERN, RESPONDENT, v. MEYER WAGENHEIM, APPELLANT.

Submitted May 11, 1928—Decided January 8, 1929.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER, and KATZENBACH.

For the appellant, *Samuel Morris*.

For the respondent, *Thompson & Hanstein*.

The opinion of the court was delivered by

PARKER, J. The appellant, defendant below, was a tenant of the plaintiff under a lease in writing which provided that the tenant should pay all excess water bills, and the suit was to recover an alleged excess water bill which defendant refused to pay. The defense was that the meter was connected with a vacant apartment over defendant's premises, wherein defendant was not responsible; and the verdict of the jury turned on their finding on this question of fact.

They found for the plaintiff, and it is claimed for appellant that the comments of the court on the testimony tending to establish the alleged leakage in the vacant apartment were prejudicial error. This is the only ground urged for reversal.

The testimony for defendant indicated that when a water bill for $682.89 came in, defendant went to the water office and saw one of the officials named McNally, who had the meter tested and found it correct, but discovered that it continued to register with all taps closed; and McNally said to defendant, "You had better get a plumber; you have a leak somewhere." Defendant did not get a plumber nor did he, so far as appears, communicate with the landlord; but he and his bookkeeper went upstairs, took a locked outer door off its hinges, entered the apartment, and discovered, as they claimed, several leaky fixtures which would account for the registration of the meter. On cross-examination of defendant, the following occurred:

"The court—what right did you have to take the door down and go into those premises that belonged to somebody else?

"The witness—Well, I wanted to see where the leak is.

"The court—Why didn't you have the man do that so that there couldn't be any question as to whether or not you turned the spigots on up there?

"The witness—My judgment wasn't good on that at that time. As soon as I seen that meter registering, the moment I didn't think. I says 'Joe, the best thing you can do is go upstairs.' I had to go to Philadelphia. I said, 'You better see where that leak is before I leave.'

"Mr. Morris—Why didn't you take a plumber?

"The witness—That was my positive error there. I didn't think it was so serious. I was disappointed because I have ice machines in all my stores, and the little business they done there, I thought it was an awful bill."

The language of the charge plainly shows that the court placed little credence in the defendant's story, and exception was taken to the part of the charge enclosed in brackets below. As to this, it is argued in the brief that defendant's testimony

"is assuredly entitled to the credence which the jury would afford it" which, of course, is true; and that "his testimony was entitled to as much weight and consideration before the jury as the testimony of any other witness" which is not necessarily true, as he was an interested party, and the jury would be justified in making allowance for that fact. The question is whether the court overstepped the limit of legitimate comment.

The charge in full, omitting a formal introductory paragraph, was as follows:

"Under the lease the plaintiff would be entitled to recover whatever amount that he was compelled to pay as excess water rent in these premises, because the lease provides that a tenant shall be liable for the excess water rent, and the defendant, it is admitted in the case, was the tenant during the time this excess water was consumed.

"The defendant, however, denies that he is liable for the excess water rent or for all of it, upon the ground that several pipes on a portion of the premises, over which he as a tenant had no control, were leaking and consuming a portion or all of the water for which he is charged for excess water. Of course, if that be true, why the defendant would not be responsible for whatever water that leaked out of the pipes in the portion of the premises over which he had no control.

"The plaintiff in this case is required to establish his right to recovery by the fair preponderance of the evidence. If he has satisfied you by a fair preponderance of the evidence that this water was consumed by the tenant, then, of course, your verdict should be for the plaintiff for the full amount. On the other hand, if you believe, as the defense alleges, that all of this water or a portion of it was used by the leakage of the pipes upstairs, then, of course, it becomes your province and your duty to determine as near as you can whatever portion, if any, of this water for which the excess charge is made was used by the tenant or was used in the leaking out of the pipes upstairs.

["The testimony of the defense that the tenant and some

of his employes went upstairs and took the door off and went into the premises and found the pipes leaking is not, in the opinion of the court, very impressive testimony. It seems to the court that it was the duty of this tenant if he wanted to supply the very best evidence to this court to have taken in with him some disinterested person or some plumber so that the exact condition of those leaking spigots upstairs may have been testified to by a plumber and the washers that would require—or necessitate the leaking should have been brought into court so that this jury and this court may determine whether or not there was an actual leakage or whether or not these spigots were turned on by someone when the excess water bill was presented to the tenant."]

"As I said before, if the plaintiff has satisfied you by the fair preponderance of the evidence, why, then, of course, you should render a verdict for the plaintiff. On the other hand, if you believe the defendant's story that all of this water or a portion of it escaped through the leaking pipes upstairs, it is your duty to determine what amount, if any, did escape through the leaking pipes and allow such a credit upon the claim of the plaintiff, and if you determine that all of the water leaked upstairs then your verdict would be a verdict for the defendant."

It will be observed that the paragraph excepted to, and enclosed in brackets above, is sandwiched between two other parts of the charge, in each of which the jury are distinctly told that if they believe defendant's story there should be a verdict for defendant or a reduction of the claim, as the case may be; so it is clear that the credibility of that story was left to them. Stress is laid on the use of the word "duty" as requiring the jury to find against the defendant because he had failed to take a disinterested person or a plumber, and bring the washers into court. But the context plainly indicates that no such control was intended, but only the view of the court on the weight and sufficiency of the evidence, which under a long line of decisions in this state, he was entitled to impart to the jury, provided always the ultimate decision on the facts was left to them; as, in fact, it

was. It is worth while to glance over the more important of those decisions, which we think will be found to give adequate support to our finding that the part of the charge brought up, when read in connection with the test, was no more than an expression of the judge's view of the value of the evidence without controlling their finding in any way.

In *Bruch* v. *Carter*, 32 *N. J. L.* 554 (at *p.* 565), the rule was thus laid down by the Court of Errors and Appeals: "A judge has an undoubted right to make such comments upon the testimony as he thinks necessary or proper for the direction of the jury. He may intimate an opinion as to the weight of evidence. He may direct the attention of the jury to any matter in the cause affecting the credibility of a witness. But whether he will exercise all or any of these rights in a given case, and to what extent, depends entirely upon his judicial discretion. Even if the judge, therefore, in the present case, was mistaken in the exercise of this discretion, as in my opinion he clearly was not, such mistake cannot be assigned for error."

In *Castner* v. *Sliker*, 33 *N. J. L.* 507 (at *p.* 511), a quotation from the charge reads in part as follows: "If you believe that the loss of the plaintiff's eyesight was the result of an intentional act on the part of the defendant, I cannot perceive how you can hesitate to find in favor of the plaintiff * * *. It is difficult to imagine how, under the ordinary conditions of a private combat, such extreme violence can be justified. In this case there did not appear to be the faintest excuse for resorting to so dire a necessity, and if, consequently, you agree with me that none of the necessities of self-defense existed at the occurrence in question, to justify the resort to such an act, and that the defendant willfully and knowingly inflicted that incurable wound, you will find a verdict against him." Commenting on this, the Supreme Court said: "This is a mere charge upon the facts and evidence, with an expression of the opinion of the judge upon the weight of evidence. * * * The instruction implied that it was their duty to decide whether it was justified by the necessity of the case. * * *"

In *Smith and Bennett* v. *State,* 41 *N. J. L.* 370, a reversal of a conviction because the trial judge in his charge assumed the existence of facts wholly unsupported by testimony, Chief Justice Beasley said (at *p.* 385) : "It has already been said that it is competent for the judge presiding at a criminal trial to lay before the jury for their consideration his own views and inferences from the proofs, and that such expressions, no matter how ill-advised or erroneous, can be reviewed on a motion for a new trial, but not on a writ of error." This was quoted and applied in *State* v. *Hummer,* 73 *N. J. L.* 714 (at *p.* 719), in regard to a statement in the charge "that the testimony of the doctors and of the child herself seemed to establish the fact that she had at some period of time been assaulted." The court said, after citing cases: "In view of these expositions of the law, it must be obvious that legal error cannot be based upon the comments in question, and that even under the broader scope of the proceedings before us they cannot be deemed to be an abuse of judicial discretion for which a reversal can be had." On the general point of comment on the evidence, some recent cases in this state are collected in *State* v. *Overton,* 85 *N. J. L.* 287 (at *p.* 294).

There is an illustrative line of cases in which it was claimed that the language of the charge amounted to control of the jury to the extent of directing a verdict for the state in a criminal case, but that claim was overruled by the court of review. They are particularly apposite in the case at bar because in all but one of them the word "duty" was used in the course of the instruction complained of; and in the remaining one the word "must" was used.

In *Drake* v. *State,* 53 *N. J. L.* 23, 32, "The court further stated to the jury that if they believed the article was published for the purpose of ridiculing Henry Cook and putting him in contempt, it was their duty to convict; and to this exception was taken. As an abstract proposition, it would not be true that a person should be convicted of libel for publishing matter intended to ridicule another and bring him into contempt; for circumstances can be supposed where

even such a publication would come within the protection of the constitution. But taken in connection with the previous instructions to the jury as to their full power over all questions, the language here complained of cannot have been understood by them as more than an expression of opinion, by way of advice rather than of peremptory direction, and so regarded, there is nothing in it illegal or improper as applicable to the case in hand."

In *State* v. *Lackawanna Railroad Co.,* 82 *N. J. L.* 747, *affirming,* 81 *Id.* 181, the language of the charge was as follows:

"This case has largely turned upon a question of law, as counsel for the state and the defense have stated to you. Your duty, therefore, is very simple, and I charge you, first, that the evidence in this case shows that this is a public highway; secondly, that the defendant corporation has obstructed the highway by narrowing it at this point, by the construction and maintenance of the abutments of an overhead bridge; and the state having proved these two circumstances in this case, it will be your duty to render a verdict accordingly, and the verdict, of course, will be a verdict of guilty."

This was challenged in the Court of Errors and Appeals as amounting to the direction of a verdict of conviction; but the court said: "We think that the charge of the trial judge did not amount to a direction of a verdict for the state, although the necessary logical result of his charge was a verdict of guilty." On re-argument, there was a reversal on other grounds not affecting this ruling. *S. C.,* 84 *N. J. L.* 289.

In *State* v. *Seifert,* 85 *N. J. L.* 104; *affirmed,* 86 *Id.* 706, the court charged: "Whether he had a right to commit that assault and battery must be determined by the law and the facts. As far as I can see from the evidence submitted there was no justification whatever for the assault and battery or the attempt to commit assault and battery that he committed that night. There was no reason for it except words. The words were insulting. Under the law as I have given it to you he stands here without any justification and is guilty of assault and battery. It is your duty to find him guilty."

The Supreme Court held this did not amount to a direction, and was sustained by the Court of Errors and Appeals, in whose *per curiam*, 86 *N. J. L.*, it is said: "We agree with the Supreme Court that there was no direction of a verdict. No such judicial action appears in the record where it normally would appear; the charge of the court returned as part of the proceedings at the trial shows that the judge stated to the jury what in his opinion was its clear duty in view of the uncontradicted testimony. This was within judicial privilege and duty (*State* v. *Hummer*, 73 *N. J. L.* 714) and does not constitute a direction of a verdict. *State* v. *Lackawanna Railroad Co., supra.*"

In *State* v. *Agnesi*, 92 *N. J. L.* 638, the judge charged, in effect, that if the jury took the defendant's version of the facts as disclosed by his testimony, they could not under any circumstances acquit him, but must find him guilty of manslaughter at least. This, in the judgment of Chancellor Walker, concurring in the affirmance of the conviction, did not amount to a direction.

We conclude that whether or not one agrees with the judge's view on the value of the testimony, the jury were left to believe it if they thought proper, and that no legal error was committed. The judgment is, accordingly, affirmed.